UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JASON McCLURE,

      Plaintiff,

v.                                                                                    Case No.  1:14-CV-845

UNITED PARCEL SERVICE                                           HON. GORDON J. QUIST
FLEXIBLE BENEFITS PLAN,
and STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendants.
_____/

## OPINION REGARDING CROSS MOTIONS
## FOR SUMMARY JUDGMENT

      Plaintiff, Jason McClure, has sued Defendants, the United Parcel Service Flexible Benefits Plan (the UPS Plan) and State Farm Mutual Automobile Insurance Company (State Farm), seeking declaratory and injunctive relief under the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*  In particular, McClure requests that the Court declare that State Farm—his automobile insurer—is primarily liable for payment of the medical expenses that McClure incurred as a result of a 2011 automobile accident and that, to the extent UPS is entitled to reimbursement for expenses it paid for McClure's medical care from any third-party recovery that McClure might obtain, State Farm must reimburse McClure for his repayment to the UPS Plan.[1]

---

[1] McClure asserts five claims in his first amended complaint: (1) a claim for declaratory relief that State Farm is primary in coverage subject to a $500 deductible (Count I); (2) enforcement of the UPS Plan terms in a declaration that State Farm is required to reimburse the UPS Plan for all of the accident-related medical expenses that the UPS Plan paid on McClure's behalf (Count II); (3) injunctive relief compelling the UPS Plan to intervene in McClure's state-court action (Count III); (4) injunctive relief enjoining the UPS Plan from seeking reimbursement against McClure's potential recovery from the third parties he has sued in state court (Count IV); and (5) injunctive relief compelling State Farm to reimburse McClure to the extent he is required to reimburse the UPS Plan (Count V).  It appears that the instant motions implicate only Counts I and V of the first amended complaint.

McClure has filed a motion for summary judgment seeking a declaration that State Farm is obligated to reimburse McClure if McClure is required to reimburse the UPS Plan for his medical care. State Farm and the UPS Plan oppose McClure's motion and have filed their own motions for summary judgment, in which they argue, among other things, that the UPS Plan is primarily responsible for McClure's medical expenses, but entitled to reimbursement by McClure.[2] Although Defendants have requested oral argument, oral argument is unnecessary because the issues are adequately briefed and oral argument would not further assist the Court in reaching a decision.

For the reasons set forth below, the Court will grant McClure's motion with regard to Counts I, II and V of his first amended complaint, grant the UPS Plan's motion with regard to Counts III and IV of the first amended complaint, and deny State Farm's motion.

**I. BACKGROUND**

The pertinent underlying facts are undisputed. On October 8, 2009, McClure was injured in an automobile accident when a vehicle driven by Joseph Cebelak, Jr. ran a blinking red light and hit McClure's vehicle. McClure suffered extensive injuries, including a closed head injury, spine trauma, and cervical radiculopathy, and incurred numerous medical expenses. (Dkt. # 9 at Page ID# 362.) On March 23, 2011, while still recovering from the injuries sustained in the first accident, McClure was involved in another accident and suffered additional injuries. In the second accident, Monique Finley, the other driver, rear-ended McClure's vehicle while he was stopped at a stop sign. McClure's injuries included aggravation of his previous injuries and additional disc herniations. (*Id.* at Page ID#363.)

At the time of both accidents, McClure was insured under a no-fault automobile insurance policy issued by State Farm. The State Farm Policy provided coverage for "***bodily injury*** to an

---

[2]The Court's experience in coordination of benefits cases is that the fight is typically between the no-fault insurer and the ERISA plan over who is primarily liable for the injured party's medical expenses. This case is an exception.

*insured* arising out of the ownership, operation, maintenance or use of a *motor vehicle*," including benefits for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an *insured's* care, recovery or rehabilitation." (Dkt. # 28-3 at Page ID#779.) As authorized by M.C.L.A. § 500.3109a, the State Farm policy contained a coordination of benefits (COB) provision.³ The COB provision states, in relevant part:

> 3. If benefits are shown as "Coordinated", after making any reductions in accordance with 1. above, any remaining amount will be further reduced for *you* or any *resident relative* by any amount paid or payable to that *person* under any:
>
>    a. vehicle or premises insurance;
>
>    b. individual, blanket or group accident or disability insurance; or
>
>    c. medical or surgical reimbursement plan.
>
> If allowable expense benefits are shown as "Coordinated" *we* will not pay the first $500 of the remaining allowable expenses that were incurred for *bodily injury* to *you* or any *resident relative* if there is no other medical insurance applicable to the *bodily injury* at the time of the accident.

(*Id.* at Page ID#781.)

McClure was also a participant in the UPS Plan, a welfare benefit plan governed by ERISA, under which McClure was entitled to medical benefits. The UPS Plan contains a COB provision, which provides:

> 5.08 <u>Coordination of Benefits with Other Plans</u>. As set forth in the [summary plan description], in the event that an Enrolled Person is entitled to any benefits from another plan or policy, Benefits under this Plan may be reduced to an amount, which together with all other amounts paid under any other plan or policy, will not exceed the Benefits that would in fact be eligible for reimbursement under this Plan.

---

³Section 3109a of Michigan's No-Fault Act requires no-fault insurers to offer, at reduced premiums, insurance coverage that coordinates with other insurance that their insureds may have. *See Transamerica Ins. Co. of N. Am. v. Peerless Indus. (MASCO)*, 698 F. Supp. 1350, 1351 (W.D. Mich. 1998). Michigan courts have held that when a no-fault insurance policy and a health insurance policy contain COB clauses, absent an exclusion of coverage by the health insurance policy, the No-Fault Act requires that the health insurance carrier be primarily liable for the insured's medical expenses arising from an automobile accident. *Auto-Owners v. Autodie Corp. Emp. Benefit Plan*, 185 Mich. App. 472, 474, 463 N.W.2d 149, 150 (1990) (per curiam).

(Dkt. # 34-1 at PageID#1408.) The UPS Plan also contains a "Maintenance of Benefits" section that explains how benefits under multiple group plans are coordinated. (Dkt. # 34-3 at 112–14.) This section does not address coordination of benefits with non-group plans or individual automobile insurance policies. However, the UPS Plan Summary Plan Description (SPD) in effect at the time of the 2011 accident excluded coverage under certain circumstances, including the following[4]:

> In addition to the items specifically listed above as excluded, the following additional items are not covered.
>
> . . . .
>
> • Services and supplies provided by a personal injury protection or compulsory medical payments provision of any motor vehicle insurance contract required by federal or state law, whether or not the participant properly asserts his or her rights under the motor vehicle insurance contract.

(*Id.* at 49-50.)[5]

The UPS Plan also contains provisions requiring participants to reimburse the UPS Plan for medical benefits paid by the UPS Plan "arising from an accident . . . for which the [participant] has, may have, or has asserted any claim or rights to recovery against a third party or parties." (Dkt. # 34-1 at PageID#1408.) The participant is obligated to reimburse the UPS Plan from "any amount or amounts received or receivable from or with respect to the third party or parties, whether by way of suit, judgment, settlement, compromise or otherwise and without regard to how the amount received from the third party or parties is characterized." (*Id.*)[6] In other words, the UPS Plan would

---

[4] The UPS Plan provides that Summary Plan Descriptions are "incorporated by reference and shall constitute a part of the Plan." (Dkt. # 34-1 at PageID#1399.)

[5] Although the UPS Plan attaches a copy of the 2008 SPD to its brief and notes that it did not contain an exclusion similar to the no-fault exclusion in the 2010 SPD, that distinction is irrelevant for purposes of this case because all of the expenses for which the UPS Plan seeks reimbursement from McClure were incurred as of 2011, when the 2010 SPD was in effect.

[6] The SPD contains a similar provision obligating a participant to reimburse the UPS Plan from any third-party recovery. (Dkt. # 34-3 at 111–12.)

4

require reimbursement from a damage award for pain and suffering and loss of income - up to the amount paid in benefits by UPS.

On September 14, 2012, McClure filed a lawsuit in Kent County Circuit Court against State Farm and Cebelak and Finley, the other drivers involved in the accidents. In the state-court lawsuit, McClure seeks to recover non-economic damages from the other drivers and his medical expenses from State Farm. State Farm contends that it is not liable for McClure's medical expenses because coverage under McClure's no-fault policy is subordinated to the UPS Plan's liability for payment of McClure's expenses.

The UPS Plan paid a substantial portion of McClure's medical expenses arising out of the accident. At some point Accent Cost Containment Solutions sent McClure an itemization of medical expenses paid as of November 12, 2013 by the UPS Plan. Accent sought payment on behalf of the UPS Plan of $70,319.31, based on McClure's pending lawsuit. (Dkt. # 28-4.) All of the medical services included in the itemized statement were provided on and after March 24, 2011—following the 2011 accident. (*Id.* at PageID#784.)

McClure filed the instant case pursuant to ERISA, seeking declaratory relief from this court on priority of coverage and reimbursement issues. The state case has been stayed pending this court's decision in the instant case.

## II. DISCUSSION

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A.

The central issue in this case boils down to whether State Farm or the UPS Plan is primarily liable for McClure's injuries arising from the 2011 accident. Because the UPS Plan is governed by ERISA, the Court must apply federal rules of contract interpretation. *Perez v. Aetna Life Ins. Co.*,

150 F.3d 550, 556 (6th Cir. 1998); *cf. Great-West Life & Annuity Ins. Co. v. Allstate Ins. Co.*, 202 F.3d 897, 900 (6th Cir. 2000) (noting that "a dispute between two insurers, one of which qualifies as an employee welfare benefit plan under [ERISA]" is governed by "federal common law").  The federal common law of contracts incorporates both state law and general contract principles.  *Perez*, 150 f.3d at 552 (citing *Regents of the Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 339 (6th Cir. 1997)); *see also US Airways, Inc. v. McCutchen*, __ U.S. __, 133 S. Ct. 1537, 1548–49 (2013) (applying "[o]rdinary principles of contract interpretation" to construe an ERISA plan).  Courts must interpret ERISA plan provisions "according to their plain meaning, in an ordinary and popular sense," *Perez*, 150 F.3d at 556, and give effect to the plan's unambiguous terms.  *Lake v. Metro. Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir.1996).

In *Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir. 1994), the Sixth Circuit held that federal common law applies to determine priority of coverage between a no-fault automobile insurance policy and an ERISA plan with competing COB clauses.  *Id.* at 374.  The court further held that ERISA preempts M.C.L.A. § 500.3109a, which requires no-fault insurers to offer insurance coverage that coordinates with other insurance plans or policies.  *Id.*  The court noted that preemption does not necessarily mean that the ERISA plan prevails over the no-fault policy.  Rather, it held that the no-fault insurer will be primarily liable for an insured's auto-related medical expenses if the ERISA plan "expressly disavow[s]" such claims.  *Id.* at 375.  Because the ERISA plan's COB clause expressly disavowed claims when medical or hospital expenses were also covered by no-fault insurance, the court held that the terms of the ERISA plan "must be given full effect in order to comply with a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims."  *Id.*

Unlike the situation in *Thorn Apple Valley*, the instant case does not involve competing COB provisions that create an irreconcilable conflict.  The UPS Plan's COB clause does not "expressly

6

disavow" claims payable under a no-fault policy. Rather, it simply *allows* for the reduction of benefits to the extent the participant is entitled to benefits from another source, so that the participant does not recover more than he is entitled to receive under the UPS Plan. But this does not resolve the issue in the instant case, at least with regard to medical expenses that McClure incurred in 2011, because the UPS Plan excluded benefits for "[s]ervices and supplies provided by a personal injury protection or compulsory medical payments provision of any motor vehicle insurance contract required by federal or state law, whether or not the participant properly asserts his or her rights under the motor vehicle insurance contract."

As an initial matter, the Court notes that this exclusion in the UPS Plan for no fault benefits is not a pure exclusion because it does not absolutely exclude coverage for medical expenses arising out of an automobile accident. Instead, it conditions the exclusion of benefits on the existence of no-fault insurance—a type of COB provision referred to as an escape provision, "which provides that there shall be no liability if the risk is covered by other insurance." *Agency Rent-A-Car*, 122 F.3d at 340-41 (citing *NALC Health Benefit Plan v. Lunsford*, 879 F. Supp. 760, 765 (E.D. Mich. 1995)). The escape provision is not ambiguous. It makes clear that benefits are not available if the participant has coverage under a no-fault policy. The first phrase of the provision, "[s]ervices and supplies provided by a personal injury protection or compulsory medical payments provision of any motor vehicle insurance contract required by federal or state law," is somewhat awkward, but the intent, as disclosed by the entire provision, is that benefits are not provided if they are available under a no-fault insurance contract.

Invoking its discretion "to interpret the terms and conditions of the Plan," (dkt. # 34-3 at 124), the UPS Plan argues that the Court must defer to its interpretation so long as it is not arbitrary and capricious. The UPS Plan asserts that the exclusion does not apply because it was intended to prevent "double dipping" and excludes coverage only when benefits have already been "provided"

7

under a no-fault policy. It argues that the UPS Plan coverage exclusion does not apply because State Farm has not yet "provided" any services or supplies to McClure. This proposed interpretation ignores a common sense reading and the second phrase of the exclusion which states that it applies "whether or not the participant properly asserts his or her rights under the motor vehicle insurance contract." The plain intent of the provision is to prevent *any* "dipping" into the plan when a no-fault insurance policy is available to provide benefits, regardless of whether the no-fault insurer actually delivers the benefits. "Even if the plan generally confers discretion on the administrator to interpret its terms, such discretion does not confer discretion to alter the plan's terms or to read out unambiguous provisions." *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005), *abrogated on other grounds by Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353 (4th Cir. 2008); *see also Gosselink v. AT&T, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001) (noting that if a plan administrator interprets the plan "in a manner that directly contradicts the plain language, the administrator has abused its discretion"). Thus, the Court need not defer to the UPS Plan's interpretation.

State Farm takes a different approach. In a somewhat tortured argument, it notes that the language of the exclusion refers to "motor vehicle contract[s]" mandated by state or federal law rather than benefits required by law. State Farm concedes that McClure's no-fault policy was a contract required by state law, but it argues that his contract did not provide benefits (medical coverage) because it contained a COB provision, as authorized by M.C.L.A. § 500.3109a. This argument ignores that, as mentioned above, ERISA preempts § 500.3109a. *Thorn Apple Valley*, 31 F.3d at 374; *see also Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 697 (6th Cir. 2006) ("An ERISA plan pre-empts § 500.3109a."). Because the State Farm policy is an "insurance contract required by federal or state law" and the exclusion expressly

8

disavows coverage when the participant has a no-fault policy, State Farm cannot rely on § 500.3109a.

State Farm further argues—albeit ambiguously—that the exclusion speaks not in terms of benefits that are "covered" or "payable" under a no-fault policy, but instead applies only to "[s]ervices and supplies provided" under a no-fault policy. State Farm argues that it did not "'provide' medical 'services or supplies'" to McClure. This argument is nonsense. The term "provide" generally means "to make available" or "furnish", *Random House Dictionary of the English Language* 1556 (2d. 1987), and there is no reason to conclude that a "personal injury protection or compulsory medical payments provision" of a no-fault policy does not make available medical services and supplies through benefits to insureds. Moreover, as noted above, the fact that State Farm did not pay for medical services or supplies is irrelevant because the exclusion applies regardless of whether the participant seeks or obtains benefits under the no-fault policy.

State Farm argues, in the alternative, that if the Court concludes that McClure's 2011 medical expenses are not covered under the UPS Plan, the Court still should not grant summary judgment for McClure because issues of fact remain with regard to how the UPS Plan treats claims for medical expenses arising out of the 2009 accident, as opposed to claims arising out of the 2011 accident. State Farm contends that because the UPS Plan did not include the exclusion at the time of the 2009 accident, "the Court must make factual determinations about the nature and extent of the injuries from each accident, as well as which claims or expenses are related to which injuries"—a task that cannot be performed on the current record. (Dkt. # 31 at Page ID809.) The Court disagrees. The expenses for which the UPS Plan seeks reimbursement were incurred in 2011 and later, when the exclusion was in effect, making State Farm primary. The only question is whether the medical expenses were incurred while the 2010 SPD was in effect. Thus, there is no reason to consider the prior version of the SPD.

**B.**

In its motion for summary judgment, the UPS Plan contends that it is entitled to summary judgment on Counts III and IV of McClure's first amended complaint through a declaration that it is entitled to reimbursement from any third-party recovery that McClure may obtain in the state-court action, regardless of how the amount is characterized, and that the UPS Plan is not required to intervene in the state-court action to obtain reimbursement and may seek it directly from McClure.

McClure does not dispute the UPS Plan's right to reimbursement, nor does he dispute the UPS Plan's argument that it may obtain reimbursement from McClure without intervening in the state-court action. Based upon the provisions of the plan, including the SPD, as well as applicable case law, *see Glover v. Nationwide Mut. Fire Insurance Co.*, 676 F. Supp. 2d 602, 613 (W.D. Mich. 2009), the UPS is entitled to summary judgment on these issues. Accordingly, the Court will enter an order declaring that the UPS is entitled to reimbursement from any third-party recovery that McClure obtains, so long as the third party was responsible for the injuries and related medical expenses encompassed in the UPS Plan's claim for reimbursement, and that the UPS Plan may obtain such reimbursement directly from McClure without intervening in the state-court action.

**C.**

The final issue is whether the Court should reach McClure's request for declaratory relief that State Farm must reimburse McClure if he is required to reimburse the UPS Plan out of any third-party recovery that McClure may obtain in the state-court action. In support of his request, McClure relies upon *Glover*, *supra*, which concluded that the Sixth Circuit's opinion in *Shields v. Government Employees Hospital Association, Inc.*, 450 F.3d 643 (6th Cir. 2006), is "authoritative and binding on this court," with regard to a no-fault insurer's obligation to reimburse an insured under the Personal Injury Protection (PIP) provisions of its no-fault policy for amounts the insured

10

is required to reimburse a health care plan. *Id.* at 616–18. State Farm does not dispute the general applicability of *Shields* or *Glover* to the instant case, but it argues that the Court should decline to address reimbursement by State Farm and instead dismiss this claim without prejudice and allow the state court to resolve it within the context of McClure's PIP claims against State Farm in the state-court action. State Farm argues that McClure's claim in this case is factually unsupported, and there are a plethora of issues pending in the state-court action as to whether McClure's expenses relating to medical treatment he received in 2011 are even covered under the PIP provisions of the no-fault policy.

The Court concludes that it may properly address McClure's claim for declaratory relief against State Farm, for the reasons set forth in *Glover*, without the necessity of addressing the factual issues that are being raised in the state-court case. *Rockwell International Corp. Employee Health Plan v. Detroit Automobile Inter-Insurance Exchange*, No. 1:99-CV-104, 1999 U.S. Dist. LEXIS 20284 (W.D. Mich. Dec. 23, 1999), which State Farm relies on as support for its argument that the Court should dismiss McClure's reimbursement claim without prejudice, is distinguishable from *Glover* and the instant case. In *Rockwell*, the plaintiff had not actually asserted a claim for reimbursement against the no-fault insurer and the court did not have the benefit of *Shields*, which was decided almost seven years after *Rockwell*. In contrast, in both the instant case and in *Glover*, the insured asserted claims against the no-fault insurer for declaratory relief and *Shields* addressed the issue. Although the Court recognizes that factual issues remain open in the state-court case, the Court can fashion declaratory relief that will allow for resolution of the factual issues in state court. For example, in *Glover*, the court did not conclude that the no-fault insurer was automatically on the hook to reimburse the insured for the amount the insured was required to reimburse the ERISA plan, but instead instructed the no-fault insurer to identify the medical expenses it declined to cover

11

and to provide the insured the reason for its decisions. The court indicated that it would address the insurer's objections, if any, in a subsequent order. *Glover*, 676 F. Supp. 2d at 622–23.[7]

Therefore, the Court will include in its order a declaration that State Farm is obligated to reimburse McClure for any amount that he is required to reimburse the UPS Plan, to the extent the medical expenses that the UPS Plan paid are within the terms of State Farm's PIP coverage.

### III. CONCLUSION

For the foregoing reasons, the Court will grant McClure's motion for summary judgment with regard to Counts I and II of his first amended complaint and declare that State Farm is primarily liable for McClure's automobile-accident-related medical expenses incurred in 2011. The Court will also grant McClure's motion for summary judgment on Count V regarding his claim for reimbursement from State Farm, as set forth above. In addition, the Court will grant the UPS Plan's motion for summary judgment with regard to Counts III and IV of McClure's first amended complaint. Finally, the Court will deny State Farm's motion for summary judgment.

An Order consistent with this Opinion will enter.

Dated: February 10, 2016  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE

---

[7] State Farm's obligation to reimburse McClure may not necessarily be coextensive with McClure's obligation to reimburse the UPS Plan. For example, if McClure obtains a settlement with, or judgment against, either of the other drivers determined to have caused the injuries relating to the 2011 medical expenses, the UPS Plan would have a claim for reimbursement of all the medical expenses it paid. However, it is possible that McClure's claim for reimbursement against State Farm may fail in whole or in part if the medical expenses that the UPS Plan paid are not within the terms of State Farm's PIP coverage. In *Glover*, the no-fault insurer ultimately reimbursed the insured the same amount the insured was required to pay to the ERISA plan. *Glover v. Nationwide Mut. Fire Ins. Co., et al.*, Case No. 1:08-cv-1086 (W.D. Mich. Dec. 22, 2009 (dkt. # 57).) In this case that question may be resolved in the state-court action.